UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| S JAY WILLIAMS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-825 |
| § | |
| WELLS FARGO BANK, *et al*, § | |
| § | |
| Defendants. § | |

**OPINION AND ORDER**

Pending before the Court are Defendants' Motion to Dismiss (Doc. 32), Motion to Designate Responsible Third Party (Doc. 34), and Motions for Summary Judgment (Docs. 50, 51), and Plaintiffs' Motion for Reconsideration of Motion to Remand (Doc. 35) and Motion for Partial Summary Judgment (Doc. 52). Having considered the motions and responses, the facts in the record and the applicable law, the Court concludes Plaintiffs' Motion for Partial Summary Judgment (Doc. 52) should be granted.

**I.      Background**

This is a wrongful foreclosure action arising from the foreclosure of a low-income housing project owned and operated by Plaintiffs in Houston, Texas. Original Pet., Doc. 1-2. Plaintiffs filed this lawsuit on February 18, 2013 in Texas state court against Fannie Mae, the holder of the note, Wells Fargo Commercial Mortgage Servicing, the loan's servicer, Winstead PC, a Texas law firm that served as counsel for Fannie Mae in the foreclosure, and three of its professionals, David F. Staas, Mark Glanowski, and Courtney Davis Bristow (collectively, "the Substitute Trustees"). *Id.* ¶¶ 6–12. The central allegation of Plaintiffs' complaint is that they did not receive the notices required by the Deed of Trust and the Texas Property Code prior to the

foreclosure. *Id.* ¶¶ 21–27. As a result of the foreclosure, Plaintiffs and their general and limited partners allege they lost almost $1.7 million in tax credits. *Id.* ¶ 36. Plaintiffs seek damages against all Defendants for wrongful foreclosure, breach of a real estate deed of trust, and violation of Texas Property Code Section 51.001, *et. seq. Id.* ¶¶ 37–43. Plaintiffs also sued the Substitute Trustees for breach of fiduciary duty. *Id.* at 12.

## II. Reconsideration of Denial of Remand

On March 13, 2014, this Court denied Plaintiffs' Motion to Remand on the basis of diversity. Doc. 30. The Court did not consider Defendants' alternative grounds of federal question jurisdiction under Fannie Mae's congressional charter. Doc. 30 at 10. Although Defendants conceded the Substitute Trustees were residents of Texas, which would have defeated diversity, the Court concluded the Substitute Trustees were improperly joined and dismissed them from the action without prejudice. *Id.* The Court found Plaintiffs were improperly joined because they could not maintain a plausible action against the Substitute Trustees, who fell within the safe harbor of Texas Property Code § 51.007(f): "A trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party."

The Substitute Trustees submitted a statement that they "relied in good faith on information provided by the mortgagee and its servicer." Substitute Trustees' Original Answer, Verified Denial, and Req. for Disclosure, Doc. 1-3 ¶ 2. Wells Fargo had sent an email to Substitute Trustee Bristow confirming the address for the borrower for purpose of providing notice. Doc. 12-7. Ms. Bristow relied on this information and used these addresses in sending the required notices. Docs. 12-8; 12-9. Plaintiffs maintain a fact issue remains as to whether the

Substitute Trustees relied in good faith on this e-mail in sending required notice of foreclosure because Wells Fargo "confirmed only the addresses for the equity investor and the key principals, *not the borrower*." Doc. 35 at 3. Prior e-mails show the email relied upon was sent in response to a request by Substitute Trustee Bristow to confirm "the borrower's, key principals', and equity investor's addresses" for purposes of the foreclosure notice. Doc. 12-7. Wells Fargo replied as follows: "These are the addresses that are in our file," listing inter alia S. Jay Williams at 7676 Woodway. *Id*. There is nothing in the email to suggest it was intended to confirm only the addresses for the equity investor and key principals and not for the borrower. Plaintiffs also speculate there may be other documents showing bad faith which the Substitute Trustees have not disclosed. Doc. 35 at 3 n. 1. Plaintiffs have failed to allege any facts that would show the Substitute Trustees did not rely in good faith on the provided addresses.

Plaintiffs next argue that, according to the "traditional order of pleading," they should not have to plead an absence of good faith in the first place. Doc. 35 at 4. Courts considering the good faith element of §51.007(f) have generally held that "§ 51.007(f) imposes a substantive pleading requirement on a plaintiff seeking to recover against a substitute trustee." *Felder v. Countrywide Home Loans*, No. H-13-0282, 2013 WL 6805843, at *5 (S.D. Tex. December 20, 2013); *see also Lassberg v. Barrett Daffin Frappier Turnere & Engel, L.L.P.*, No. 4:13CV577, 2014 WL 2446173, at *4 (E.D. Tex. May 30, 2014); *Purported Lien or Claim Against Bond v. Barrett Daffin Frappier Turner & Engel*, LLP, No. G-12-188, 2013 WL 1619691, at *3 (S.D. Tex. March 22, 2013); *Leal v. Bank of New York Mellon*, No. C–12–265, 2012 WL 5465978, at *5 (S.D. Tex. Oct.22, 2012); *Mechali v. CTX Mortg. Co.*, LLC, No. 4:11CV114, 2011 WL 2683190, at *4 (E.D. Tex. June 7, 2011), *adopted by* No. 4:11CV114, 2011 WL 2685708 (E.D. Tex. July 11, 2011); *Eisenberg v. Deutsche Bank Trust Co. Americas*, No. SA–11–CV–384–XR,

2011 WL 2636135, at *3–4 (W.D. Tex. July 5, 2011); *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 611 (N.D. Tex. 2009)); *cf. Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 719 (W.D. Tex. 2014) (affirming a valid claim against substitute trustee where "nothing in the allegations, arguments, or exhibits attached to the various motions state or show that [substitute trustee] relied on information provided by CitiMortgage when representing that [borrower] had been served with notice"). Plaintiffs argue all these federal cases are incorrectly decided, because "[t]here is nothing anywhere in Section 51.007 or in Texas caselaw that suggest[s] that 'bad faith' is an element of proof of a claim," although Plaintiffs "could not locate any relevant Texas state court cases interpreting Section 51.007(f)." Doc. 35 at 4.

Section 51.007 supercedes the traditional order of pleading, providing a procedure for dismissing substitute trustees in addition to a good faith exception to liability. Furthermore, in the context of a motion to dismiss for improper joinder, the Court may skip over the pleadings entirely and consider "omitted discrete facts that would determine the propriety of joinder." *Georgia Gulf Lake Charles,* 342 Fed. Appx. 911, 915 (5th Cir. 2009). Here, Defendants have submitted evidence showing the Substitute Trustees relied on an e-mail from Wells Fargo in providing notice of foreclosure. Doc. 12-7. Plaintiffs have neither disputed this evidence nor responded with any alleged evidence suggesting bad faith which might overcome the good-faith exception of Section 51.007(f). *See Hearn v. Deutsche Bank Nat'l Trust Co.*, No. 3:13- CV-2417-B, 2013 WL 6079460, at *3 (N.D. Tex. Nov. 18, 2013) ("The Court need not decide this verified denial issue in order to rule on Defendants' claims of improper joinder, however, because even if Trustee Defendants are not dismissed under § 51.007(c), there is no reasonable basis for predicting that Hearn will be able to recover against Trustee Defendants." (citing *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 572 (5th Cir. 2003) (en banc)). In their

Motion for Reconsideration and their Reply, Plaintiffs do not raise additional authority or evidence that was not already before the Court. *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) ("A motion to alter or amend judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence.").

Plaintiffs seek in the alternative leave to file a Second Amended Complaint to include the Substitute Trustees as parties. Doc. 35 at 4. The proposed Second Amended Complaint, however, does not raise additional allegations or evidence of bad faith by the Substitute Trustees, beyond allegations unsupported by any authority that the Substitute Trustees failed to engage in "further inquiry" of the information given by Wells Fargo. Plaintiffs' Motion for Reconsideration and request for leave to file a Second Amended Complaint are denied.

### III.     Motions for Summary Judgment

#### A.     Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Initially the moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant then can defeat the motion for summary judgment

only by identifying specific evidence of a genuine issue of material fact, *Anderson*, 477 U.S. at 248-49.

### B. Discussion

Defendants seek summary judgment on the following grounds: (1) Plaintiffs suffered no compensable damages, (2) Plaintiffs' claims for breach of the Deed of Trust, violations of the Texas Property Code, and negligence per se fail as a matter of law, and (3) Defendants did not fail to comply with foreclosure notice requirements. Doc. 50.

#### 1. Damages

Defendants argue Plaintiffs did not suffer alleged damages of $1.7 million lost tax credits, because the credits and the liability on recapture were passed through to the limited partners of Swis Community, Ltd. Doc. 50 at 9–10 ("[Plaintiff] Swis Community does not personally pay income taxes or receive income-tax credits itself. Only the individual human or C-corporation investors pay these taxes and receive LIHTC."). Defendants cite no authority supporting their argument, which contradicts a basic rule of partnership law: "a partnership cause of action belongs to and is the specific property of the partnership." *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1176 (5th Cir. 1985). Swis Community applied for, received, and lost the tax credits. Docs. 52-16 at 2; 52-17; 52-28. In addition, according to a settlement agreement, Plaintiff Jay Williams became the sole limited partner of Swis Community, and the agreement expressly contemplates Swis Community would pursue this action. Docs. 52 at 16; 52-29.

Defendants next argue recaptured tax credits are not recoverable in wrongful foreclosure suits, which generally provide recovery of fair market value minus outstanding debt. Doc. 50 at 13; *see C & K Investments v. Fiesta Group, Inc.*, 248 S.W.3d 234, 254 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The correct measure of damages is the difference between the value of the

property in question at the date of foreclosure and the remaining balance due on the indebtedness."). Defendants do not cite authority excluding damages for lost tax credits and admit "[n]o Texas case law directly addresses . . . whether this type of consequence can be recoverable." Doc. 50 at 13. In general, "a person who suffers loss or material injury because of irregularities in a foreclosure sale is entitled to maintain a suit for wrongful foreclosure." *Wieler v. United Sav. Ass'n of Texas*, FSB, 887 S.W.2d 155, 158 (Tex. App.—Texarkana 1994, no writ), *writ denied sub nom. United Sav. Ass'n of Texas v. Wieler*, 907 S.W.2d 454 (Tex. 1995); *see also Charter Nat. Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied) ("Texas law conforms with the general rule found in other jurisdictions that mere irregularities in the conduct of the foreclosure sale will not vitiate the sale unless the irregularities result in injury to the mortgagor."); *c.f. Miller v. BAC Home Loans Servicing*, L.P., 726 F.3d 717, 727 (5th Cir. 2013) (denying wrongful foreclosure claim where debtor alleged neither inadequate selling price nor suppressed bidding but breach of an alleged promise to delay the sale and "vague failures to comply with Texas statutory requirements in effecting the sale"). Here, the alleged irregularity was not vague but a failure to provide notice of sale, the most basic statutory requirement. The traditional measure of damages for wrongful foreclosure by comparison to fair market value does not apply to the alleged injury in this case, i.e. a loss of tax credits. Nonetheless, Plaintiffs allege a "loss or material injury because of irregularities in a foreclosure." *Wieler*, 887 S.W.2d at 158.

    2.    *Breach of Deed of Trust, Violations of Property Code*

Plaintiffs argue, even if the tax credits are not recoverable under wrongful foreclosure, they are recoverable under breach of the Deed of Trust. Doc. 52 at 24. In addition to avoiding a strained application of the doctrine of wrongful foreclosure, viewing the suit as an action for

breach gives due respect to the principle that "terms set out in a deed of trust must be strictly followed." *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982); *Baker v. Countrywide Home Loans, Inc.*, CIV A 308-CV-0916-B, 2009 WL 1810336, at *5 (N.D. Tex. June 24, 2009) (noting wrongful foreclosure and breach are "premised on separate theories of liability" and holding "claims for failure to comply with the HUD regulations [governing foreclosure of mortgages provided by the Fair Housing Act for lower-income homeowners] in question are best classified as a breach of contract"); *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (noting "Texas law is not altogether clear concerning the distinctions between a claim for wrongful foreclosure and one for breach of contract where the alleged breach arises from a deed of trust" but holding breach is "the appropriate, more directly applicable claim" where the claim concerns the misapplication of proceeds rather than the "the foreclosure sale itself: its manner, its fairness, its competitiveness, and its result"); *Gatling v. CitiMortgage,* Civil Action No. H-11-2879, 2012 WL 3756581 (S.D. Tex August 28, 2012) (granting summary judgment against plaintiff for wrongful foreclosure because of lack of wrongful foreclosure damages, but denying summary judgment based on breach of the deed of trust due to alleged failure to provide proper notices under the deed of trust).

Defendant Wells Fargo counters it is not liable under the Deed of Trust because Wells Fargo had "transferred loan responsibility to Fannie Mae" in January 2011, prior to foreclosure proceedings. Doc. 53 at 4. Wells Fargo provides no evidence of such a transfer, and Plaintiffs have produced numerous documents from Wells Fargo regarding the foreclosure, including the e-mail confirming the notice address. Doc. 12-7.

Plaintiffs separately assert violations of the Property Code as a stand-alone cause of action. All the cases cited by Plaintiffs, however, dismiss such stand-alone claims. Doc. 52 at 29. Plaintiffs'

claim of negligence per se is barred by the economic loss rule. *Southwestern Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

    3.    *Notice of Foreclosure*

The Deed of Trust provides: "[a]ll notices, demands and other communications (**"notice"**) under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in this Instrument . . . ." Doc. 52-3 at ¶ 31. The borrower's address in the Deed of Trust is 7676 Woodway, Houston, TX. *Id.* at ¶ 1. Defendants argue they complied with notice requirements by sending notice to 7676 Woodway. Doc. 50 at 8. Defendants do not, however, dispute that Plaintiffs never received actual notice.

In addition to the provision for general notices in ¶ 31, the Deed of Trust provides specific and detailed requirements for service of foreclosure notices:

> At any time during the existence of an Event of Default, Lender . . . may invoke the power of sale . . . . Such sale shall be made . . . after . . . Lender has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to Lender's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor *at debtor's most recent address as shown by Lender's records*, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

Doc. 52-3 at ¶ 43 (emphasis added). This provision tracks foreclosure notice requirements in the Texas Property Code:

> Notice of the sale . . . must be given at least 21 days before the date of the sale by . . . serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt. . . . Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor *at the debtor's last known address*. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

Tex. Prop. Code § 51.002 (emphasis added). The Property Code defines "debtor's last known address" as:

> the debtor's last known address *as shown by the records of the mortgage servicer* of the security instrument unless the debtor provided the current mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002.

Tex. Prop. Code § 51.0001(2)(B) (emphasis added).

Plaintiffs show the borrower's address was changed from 7676 Woodway in the records of the mortgage servicer beginning in 2002. Billing Statements from Arbor Commercial Mortgage, LLC, April 2002 to August 2005, Doc. 52-6 at 1–40; Billing Statements from Wachovia Securities, December 2005 to March 2010, Doc. 52-7 at 1–52; Billing Statements from Wells Fargo, April 2010 to November 2010, Doc. 52-8 at 1–10. On January 27, 2003, Plaintiffs' property management company sent a fax to the mortgage servicer stating:

> Please update your records to reflect the following:
> Mailing Address (Unchanged): P.O. Box 771149, Houston, TX 77215-1149
> Physical Address (New): 11000 Brittmoore Park Drive, Suite 200, Houston, TX
>     77041-6920
> ………………………..
> Re: Swis Community, Ltd.
> Loan Number 001710

Doc. 52-9. On November 3, 2010, the mortgage servicer (Wells Fargo) sent an IRS Form W-9 to the property management company, with a cover letter stating it was "in the process of updating our records to ensure we have current information with regards to the above borrower entity." Doc. 52-10. The property management company returned the W-9 with the current 11000 Brittmoore address. *Id.* On January 28, 2011, the property management company sent Wells Fargo an Environmental Questionnaire with the current 11000 Brittmoore address. Doc. 52-11. Most noteworthy, in December 2010, an employee of Wells Fargo named Beverly Furbush prepared an internal pre-foreclosure "DUS Delinquent Loan Report" stating the borrower's

address was "c/o Property Commerce, Post Office Box 771149B, Houston, TX 77215." Exh. 7, Doc. 52-21. Ms. Furbush was the same employee who e-mailed the Substitute Trustee Bristow from Wells Fargo providing the obsolete Deed of Trust address for the purpose of the subsequent foreclosure notice. Doc. 12-7.

Plaintiffs do not allege Defendants or their agent Ms. Furbush defrauded Plaintiffs by intentionally sending notice to the wrong address. Rather, Plaintiffs attribute lack of notice to the "incompetent effort of a new, inexperienced and poorly trained Wells Fargo employee." Doc. 56 at 3. Ms. Furbush testified she had "very limited experience" working on foreclosures, she had recently joined Wells Fargo, and she was only instructed to look at the Deed of Trust to confirm borrowers' addresses. Furbush Dep., Doc. 52-19, Exh. 5 at 17, 22. She explained Wells Fargo kept deeds of trust along with other loan documents in a digitized form in a computer system called File Net:

> Q. Now, if you were requested to provide addresses on a particular loan, where would you go to find those addresses?
> A. I would go to the Deed of Trust.
> …………..
> Q. And that's the only place you would look?
> A. Yes.
> Q. Would you have looked for documents that noted change of address for any particular client or borrower?
> A. I would have looked to see if there was an official notice of a change of address in File Net.
> Q. Would you have looked to see where the statements were being sent for that particular client?
> A. No.
> Q. And why not?
> A. I had no reason to look at the statements.
> Q. Okay.
> A. I would have looked for a Deed of Trust, which would have the official address. And if there was a change -- an official change of address, it would be in File Net under that.

*Id.* at 22–23.

Wells Fargo does not deny it had a record of Swis Community's updated address, as shown by nine years of correspondence to that address, but denies it was provided an official "written notice to change notice address." Doc. 32 at 3. The Deed of Trust provides: "Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with section 31." Doc. 52-3 ¶ 31(b). Section 31 specifies "[a]ll notices . . . shall be in writing . . . addressed to the intended recipient at its address set forth in this Instrument." *Id.* The Texas Property Code similarly requires a debtor provide a "written change of address before the date the mortgage servicer mail[s] a [foreclosure] notice." Tex. Prop. Code § 51.0001(2)(B). Plaintiffs respond they did, in fact, provide a written change of address in the 2003 fax which confirmed the "new" physical address and the "unchanged" mailing address. Doc. 52-9. Plaintiffs admit they could not locate the previous document changing the mailing address. Defendants cite the testimony of Plaintiff S. Jay Williams showing a change of address was never sent. Doc. 57 at 2. On the contrary, Williams acknowledged the 2003 fax in his testimony and stated he did not know whether another change of address was sent:

> Q. [Y]ou've never seen a written change of address from the borrower to the lender on the Fannie Mae loan, correct?
> A. I have not seen anything other than this January 27th, 2003 letter -- fax. I don't recall another change of address letter being sent, other than this one.
> Q. And you searched high and low, correct?
> A. We searched through all our files. . . . This is the only document that -- or the only notice -- change of notice address I have found or our company has found during this process on the change of notice – or the change of address notice.
> Q. And are you saying that there was something else and it hadn't been found or--
> A. I don't know.
> Q. --as best you know, there wasn't anything else?
> A. I don't know if there was anything else.

Doc. 50, Exh. 18, Deposition of S. Jay Williams, Jr., Swis Community Corp. Rep., at 82:13–84:18.

Defendants argue the fax, the W-9, and the Environmental Questionnaire were insufficient notice of change of notice address under *Kainer v. ABMC Corp.*, No. 01-05-00338-CV, 2006 WL 407794 (Tex. App.—Houston [1st Dist.] Feb. 23, 2006, no pet.). In *Kainer*, the court held there was no summary judgment evidence of insufficient notice sent to an obsolete address on the Deed of Trust, even though the debtor had produced "a copy of an envelope" sent to the updated address by a predecessor of the note holder. *Id.* at *7. *Kainer* is distinguishable, because the debtor in that case only alleged a *predecessor* of the note holder knew the debtor's correct address, whereas Plaintiffs here have shown the current mortgage servicer, Wells Fargo, knew the updated address. *Id.* at *6. In addition, the debtor in *Kainer* admitted he had not submitted a written change of address, whereas Plaintiffs here allege they submitted a written change of address. *Id.* at *6. Similarly, in *Ashton v. BAC Home Loans Servicing, L.P.*, the court dismissed a wrongful foreclosure claim based on "various written documents" sent to an updated address regarding a loan on a *different property*. 4:13-CV-810, 2013 WL 3807756, at *3 (S.D. Tex. July 19, 2013) ("It would be commercially unworkable for mortgagees to have to guess what address the borrower intended the mortgagee to use or for mortgagee to be required to send notices to all properties connected to the borrower.").

Here, Plaintiffs have produced nine years of loan payment statements for the property at issue, in addition to a fax, W-9, and Environmental Questionnaire confirming the address. Moreover, the very same employee (Ms. Furbush) who gave the Substitute Trustees the incorrect address in January 2011 (Doc. 12-7) prepared a delinquent loan report on the property with the updated address in December 2010. Exh. 7, Doc. 52-21. Wells Fargo's inability to locate an "official" notice of change of notice address in their file system does not establish notice was not provided. Rather, it indicates Wells Fargo or its employee was not able to locate the borrower's

most recent address in its file system. A reasonable jury presented with the voluminous correspondence in the record could only conclude notice of the borrower's address change had been sufficiently provided pursuant to the Deed of Trust and the Property Code.[1]

### IV. Motion for Designation of Responsible Third Party

Defendants seek to designate Property Commerce Management Company, the company managing the property at issue, as a responsible third party. Doc. 34. Defendants allege Property Commerce stopped payments on the note, causing default, and then paid itself $50,000 rather than cure the default. Doc. 34 at 2. Defendants allege Plaintiff WNC Institutional Tax Credit Fund VII, LP, which owned 99.98% of the borrower (Swis Community), did not instruct or even know Property Commerce had stopped payments and paid itself. Doc. 44 at 3. Defendants also allege that Plaintiff Williams owned and controlled Property Commerce, and Williams caused Property Commerce to stop payment. Doc. 34 at 2. Defendants submit testimony from the corporate representative of WNC saying Williams's actions violated Swis Community's partnership agreement. Doc. 44 at 4.

Under Texas law, a defendant seeking to designate a responsible third party over a plaintiff's objection must "plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." Tex. Civ. Prac. & Rem. Code §33.004. Defendants have not pled any facts concerning Property Commerce's responsibility concerning the causes of action in this suit. Whether Property

---

[1] The parties disagree as to whether the notice of address change requirements of the Property Code supercede those in the Deed of Trust. The Deed of Trust requires notices of changes of address to be in writing (Doc. 52-3 ¶ 31(b)), although this provision is arguably superceded by the detailed requirements of the foreclosure notice section (*Id.* ¶ 43), which does not have such a requirement. The Property Code provides an even more lenient standard: "A debtor shall inform the mortgage servicer of the debt *in a reasonable manner* of any change of address of the debtor for purposes of providing notice to the debtor under Section 51.002." Tex. Prop. Code § 51.0021 (emphasis added); *see Wylie v. Hays*, 263 S.W. 563, 569-70 (1924) ("[W]here a valid statute regulates the operation of the power and where the deed of trust granting the power has been executed and delivered after the statue has become effective, the provisions of the latter supersede and are read into the former just as if set out in it.").

Commerce contributed to default on the note is not relevant to whether it was responsible for the alleged wrongful foreclosure.

## V.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Reconsideration of Motion to Remand (Doc. 35) is **DENIED**,

**ORDERED** that Defendants' Motion to Designate Responsible Third Party (Doc. 34) is **DENIED**,

**ORDERED** that Defendants' Motion to Dismiss (Doc. 32) and Motion for Summary Judgment (Doc. 50) are **DENIED**,

and **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 52) is **PARTIALLY GRANTED**. Plaintiffs shall file an itemized list of damages with supporting documentation on their claim for breach of the Deed of Trust. Plaintiffs' remaining claims are **DISMISSED** with prejudice.

SIGNED at Houston, Texas, this 5th day of February, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE