UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| S JAY WILLIAMS, SWIS COMMUNITY LTD., ET AL. § § § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-00825 |
| § | |
| WELLS FARGO BANK, N.A. and FANNIE MAE a/k/a FEDERAL NATIONAL MORTGAGE ASSOC., ET AL. § § § | |
| Defendants. | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Swis Community Ltd.'s Itemized List of Damages, Doc. 60, and Application for Attorney's Fees and Costs, Doc. 61. Having considered the motions, response, and reply, the Court grants the requested damages, fees, and costs.

**I.   Background**

On February 5, 2015, this Court granted partial summary judgment in favor of Plaintiff Swis Community Ltd. on their claim of breach of deed of trust. Doc. 59. The Court directed Swis Community Ltd.  to file an itemized list of damages with supporting documentation on that claim. Plaintiff request $2,123,641.54 in itemized damages, $153,887.50 in attorney's fees, and $12,733.67 in costs, Docs. 60, 61. In support, Plaintiff has submitted three invoices for costs and a time record indicating its attorney performed 473.50 hours of legal services at a rate of $325.00 per hour. Doc. 61-1, Exs. 2, 3, 4, 6.

**II.   Discussion**

**A.   Plaintiff's Itemized List of Damages**

Defendants Wells Fargo Bank N.A. and Fannie Mae argue, "Plaintiffs may not recover

recapture 'damages' of $1,698,524.00, because Borrower assigned 99.98% of those credits to the WNC Fund, which sold 99.99% of the credits to Key Fund, which sold them to Fannie Mae." Doc. 62 at 10. The Court has already addressed exactly this argument in its Order granting summary judgment:

> Defendants argue Plaintiffs did not suffer alleged damages of $1.7 million lost tax credits, because the credits and the liability on recapture were passed through to the limited partners of Swis Community, Ltd. . . . . Defendants cite no authority supporting their argument, which contradicts a basic rule of partnership law: "a partnership cause of action belongs to and is the specific property of the partnership." *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1176 (5th Cir. 1985). Swis Community applied for, received, and lost the tax credits. Docs. 52-16 at 2; 52-17; 52-28. In addition, according to a settlement agreement, Plaintiff Jay Williams became the sole limited partner of Swis Community, and the agreement expressly contemplates Swis Community would pursue this action. Docs 52 at 16; 52-29.

Doc. 59 at 6.

Defendants seek to distinguish *Cates* on grounds that it involved an entity that "suffered an actual injury: contracts belonging to the partnership were breached or interfered with"; whereas Plaintiff has not "suffered any injury at all." Doc. 62 at 17. As the Court found, however, Plaintiff suffered a breach of the deed of trust.

Defendants offer *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605 (Tex. 2004) as a "useful analogy," while admitting "neither side has found a case which addresses whether tax credit recapture in a pass-through tax entity may be claimed as damages by the entity passing through the credits." Doc. 62 at 4. In *Interstate*, the Texas Supreme Court held, "Texas recognizes pass-through claims," i.e. claims asserted by "a contractor . . . against an owner on a subcontractor's behalf when there is no privity of contract between the subcontractor and the owner," on condition that "the contractor remains liable to the subcontractor for damages sustained by the subcontractor." 135 S.W.3d at 607, 618. Otherwise, the owner "would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its

liabilities under its contract," contrary to both "reason and equity." *Id.* at 618 (quoting *Buckley & Co. v. State,* 356 A.2d 56, 73 (N.J. Super. Law Div. 1975). *Interstate* addressed only the liability of a defendant to a contractor for damages to a subcontractor, not the liability of defendant to a partnership for damages to its limited partners. Its usefulness as an analogy is limited, except to illustrate the principle that the law abhors defendants' attempts to avoid liability on grounds that damages have passed through to other entities. As Plaintiff puts it, the effect of Defendants' argument is that Plaintiff's claim "must be dumped into a no man's land type black hole that prevents Defendants from ever having to pay the damages they caused by breaching the Deed of Trust." Doc. 63 at 6.

Texas courts have denied standing of partnerships where the partnership did not exist prior to the injury, *Baker v. City of Robinson*, 305 S.W.3d 783, 788 (Tex. App. – Waco 2009, pet. denied), or was a different entity from the entity that suffered the injury. *Gonzales v. Greyhound Lines*, 181 S.W.3d 386 (Tex. App.—El Paso 2005, pet. denied). In general, a "partnership cause of action belongs to and is the specific property of the partnership," and breach of a partnership's contracts with third parties may not be asserted by a partner. *Cates*, 756 F.2d at 1176. "Accordingly, any claims for damages which [the partner] suffered by reason of diminution in value of his partnership interest, or his share of partnership income . . . by reason of breach of such agreements . . . are in effect subsumed within the causes of action of the partnerships." *Id*. at 1181.

At least one court has considered whether a tax-credit recapture may be claimed as damages by a pass-through entity. *Key Inv. Fund v. Urban P'ship, L.L.C.*, CIVA 1:05CV0997 JOF, 2006 WL 2458812, at *1-10 (N.D. Ga. Aug. 22, 2006). Similar to this case, *Key* involved an apartment development owned by a real estate partnership that passed 99.9% of its low

income tax credits to a partner in exchange for an investment. The partnership defaulted; Fannie Mae foreclosed, ending the "stream of tax credits flowing from the property"; and the IRS recaptured the tax credits. *Id*. at 5. The defendants argued the plaintiffs should not be entitled to the recaptured tax credits, since they had passed through to Fannie Mae. *Id*. at 6 (noting "the details of which are not relevant to this argument"). The defendants argued the "true measure of damages" was the plaintiff's liability to Fannie Mae, which was likely zero. *Id*.

> The court disagrees. Plaintiff made a contract with Defendants for tax credits in return for investment. Plaintiff is damaged to the extent those tax credits fail to materialize. . . . [T]he simple fact of the matter is that the Partnership Agreement is at issue in this case, not whatever contractual arrangements Key has made with Fannie Mae. . . . Other than the theory set forth above and rejected by the court, Defendants have made no argument that the calculations of the Projected Tax Credits were faulty in any way.

*Id*. The court held a hearing to consider alternative measures of damages, which it denied.

> Defendants, themselves, contended that the loss of the tax credit would not be a simple calculation because it depended on the other tax circumstances of the party taking the tax credit. The parties also discussed the fact that a "market" existed for tax credits, but that it would be difficult to establish the "fair market value" of the tax credits at any particular time. Particularly in light of no other argument from Defendants, these circumstances indicate to the court that the calculation of the actual worth of the tax credits to Key would be difficult to accurately estimate.

*Id*.

Here, the Internal Revenue Service obtained a recapture of $1,207,616.97 in tax credits awarded to Plaintiffs. Doc. 60 at 3. Fannie Mae's 2011 Form 1065 shows it paid the Internal Revenue Service $1,206,049.00 in LIHTC recapture owed by WNC Fund as well as interest. Doc. 62-4 at ¶ 9, Doc. 62-4-A.[1] The remaining $1,567.97 was split between Key Affordable Housing Corp. and the taxpaying entities of WNC Housing and WNC Fund. Doc. 62-4 at ¶ 8.

---

[1] At the time of the foreclosure, Swis Investments, Ltd. was the general partner and .01% owner of Swis Community, WNC Housing, L.P. (WNC Housing) was the special limited partner and .01% owner of Swis Community, and WNC Institutional Tax Credit Fund, L.P. (WNC Fund) was the limited partner and 99.98% owner of Swis Community. Doc. 1, Doc. 62-1. Key Investment Fund, L.P. (Key Fund) owned 99.99% of WNC Fund while Key Fund was owned 99.90% by Fannie Mae and .10% by Key Affordable Housing Corp. Doc. 62-4 ¶¶ 3-5.

The record does not include Form 1065s for Key Affordable Housing Corp. or the taxpaying entities of WNC Housing and WNC Fund. The partners' damages as a result of Defendants' breach are subsumed within Plaintiffs' damages.

In order to compensate the partners for the recapture, Swis Community may allocate the damage award to the partners just as it did the tax credits, pursuant to the partnership agreement. The liability of the partnership to the partners, however, is not before the Court. According to Plaintiffs, "Fannie Mae was paid $625,000.00 from WNC Fund VII (which included money that WNC Fund VII received to settle litigation with Jay Williams) to compensate Fannie Mae for the loss of tax credits that it caused [as a Defendant] by breaching the Deed of Trust." Doc. 63 at 7 n.13.

Lastly, Defendants argue, "Itemization fails to account for the costs Plaintiff necessarily would have incurred into the future to avoid a recapture." Doc. 62 at 18. The recaptured tax credits, however, are not "lost profits." *See id.* at 19 (acknowledging that Plaintiffs "do not claim that the LIHTC are "profits"). Like the defendants in *Key,* Defendants have offered no authority or means of calculating the "true measure of damages" beyond what is set forth in the Itemization of Damages. 2006 WL 2458812, at *6.

B.   **Attorney's Fees**

Defendants argue Plaintiff has failed to segregate attorney's fees for issues in which they lost. Plaintiffs filed an unsuccessful motion to remand. All of the other issues on which Defendants argue Plaintiffs did not prevail were intertwined with the issue on which Plaintiff Swis Community, Ltd prevailed. Plaintiff, however, segregated hours related to its wrongful foreclosure claim, which was intertwined and identical to the claim on which it prevailed. The Court finds Plaintiff is entitled at least to the amount of requested attorney's fees.

### III.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff' Swis Community, Ltd.'s Itemized List of Damages, Doc. 60, and Application for Attorney's Fees and Costs, Doc. 61, are **GRANTED**.   It is further

ORDERED that Defendants Wells Fargo Bank N.A. and Fannie Mae, a/k/a Federa National Mortgage Assoc. pay to Plaintiff Swis Community, Ltd.  $2,123,641.54 in itemized damages, $153,887.50 in attorney's fees, and $12,733.67 in costs.

SIGNED at Houston, Texas, this 30th day of September, 2015.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE